# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| FREDERICK J. GREDE, not individually, but as Liquidation Trustee of Sentinel Management Group, Inc., | ) ) ) ) | Case No. 09 C 5162 |
|  | ) | Honorable James B. Zagel |
| Plaintiff, | ) ) |  |
| BLACK RIVER FINANCE LLC, | ) ) |  |
| Defendant. | ) ) ) | |

## BLACK RIVER FINANCE LLC'S
## MOTION FOR RECONSIDERATION OF ITS MOTION TO DISMISS
## THE TRUSTEE'S COMPLAINT

Thomas K. Cauley, Jr.
Matthew B. Kilby
Elizabeth Maxeiner
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000 (Telephone)
(312) 853-7036 (Facsimile)

Dated: November 18, 2009

Black River Finance LLC[1] ("Black River"), through its attorneys, respectfully submits this Motion for Reconsideration of Its Motion to Dismiss the Trustee's Complaint in *Grede v. Black River Finance, LLC*, Adv. No. 09-512 (Bankr. N.D. Ill. 2009).

## PRELIMINARY STATEMENT

Plaintiff Frederick J. Grede, as Liquidation Trustee and Representative of the Estate of Sentinel Management Group, Inc. (the "Trustee"), sued Black River, a former customer of debtor Sentinel Management Group, Inc. ("Sentinel") in the U.S. Bankruptcy Court for the Northern District of Illinois to recover $97,644,073 that Sentinel paid to Black River when Black River withdrew funds it had deposited with Sentinel in July and August 2007, shortly before Sentinel filed for bankruptcy. Black River moved to dismiss the Trustee's Complaint for failure to state a claim and at the same time filed a Motion to Withdraw the Reference from the Bankruptcy Court. On October 28, 2009, only six days before Bankruptcy Judge Squires had stated he would rule on Black River's motion to dismiss, this Court withdrew the reference in fifteen similar customer avoidance actions. *See Grede v. Fortis Clearing Americas LLC*, No. 09-138, Mem. Op. and Order ("*Fortis* Opinion") (No. 09-00138) [DE #25]. At oral argument on Black River's motion to dismiss, Judge Squires acknowledged this Court's withdrawal of those cases, and stated that he expected this Court to also withdraw the reference with respect to this case. (*See* Tran. of Proceedings before the Hon. Squires, Adv. No. 09-512 (Nov. 3, 2009) at 7:14-8:10 [DE #38] (Ex. 1).) Judge Squires denied Black River's motion to dismiss "without prejudice," and without reaching any of the threshold legal issues set forth in the parties' briefs, including the legal issue that ultimately led this Court to withdraw the reference. As Judge Squires had

---

[1] Black River takes its name from the Black River that flows through west-central Wisconsin.

foreseen, this Court withdrew the reference in this action the very next day, on November 4, 2009.

Black River respectfully requests that this Court reconsider Black River's Motion to Dismiss the Complaint, which is fully briefed.  In his brief November 3, 2009 oral decision on that motion, Judge Squires declined to reach the threshold legal issue at the heart of both Black River's Motion to Withdraw the Reference and its Motion to Dismiss.  It is Black River's position that, as a matter of law, Sentinel cannot carry its burden of alleging that the investment returned to Black River was property of Sentinel's estate because those funds were subject to a statutory trust created by the segregation requirements of the Investment Advisers Act and the Commodity Exchange Act ("CEA"), and an express trust created by the Investment Management Agreement ("Management Agreement") between the parties.  The Trustee, however, argues that a bankrupt investment adviser and futures commission merchant ("FCM") can defeat a statutory trust and increase its bankruptcy estate by simply refusing to follow segregation requirements and misusing trust assets.  In other words, the Trustee argues that a debtor can gain equitable title to statutory trust assets through theft from a trust account.

The Trustee's position is contrary to case law and flatly inconsistent with the Congressional intent behind the Investment Advisers Act and the CEA, which is to protect customers' assets from a broker's creditors.  Judge Squires having declined to address this important threshold issue, its resolution remains for this Court.  In fact, resolving this very question is the reason this Court withdrew the reference.  *See Grede v. Black River Finance LLC*, No. 09-5162, Order Granting Black River's Motion to Withdraw the Reference, [DE #12] (N.D. Ill. Nov. 4, 2009) ("Nov. 4, 2009 Order") ("The issue that Black River points to is . . . whether the Investment Advisers Act creates a statutory trust thereby excluding customer

property from Sentinel's Bankruptcy estate, and whether mishandling of customer property destroys that trust").[2]

As the attached briefs Black River submitted to the Bankruptcy Court in support of its motion to dismiss demonstrate (exhibits 2 & 3), dismissal of the Complaint is required because the Trustee failed to allege, as required by 11 U.S.C. § 547(b), that Sentinel obtained a property interest in the SEG 3 trust account from which Black River was paid.  The Trustee's Complaint is legally deficient for the following reasons explained in that briefing: (1) the Investment Advisers Act and CEA created a statutory trust in Black River's SEG 3 account, and the Management Agreement created an express trust in that same account; (2) under both statutory trust principals and express trust principals, Sentinel could not acquire a property interest in a trust account; and (3) Sentinel's misappropriation of statutory and express trust assets did not create a property interest on its behalf, nor did it suffice to impose *constructive* trust tracing requirements on Black River.  This Court should reject the extraordinary expansion of Section 547 and related infringement on the Investment Advisers Act and CEA's segregation requirements that the Trustee's Complaint advocates.

## BACKGROUND

Sentinel was registered with the Securities and Exchange Commission ("SEC") as an investment adviser under the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 *et seq*. Sentinel was also registered with the Commodity Futures Trading Commission ("CFTC") as an FCM.  As both a registered investment adviser and an FCM, Sentinel was required to segregate

---

[2] While Black River is the only customer defendant to have filed a motion to dismiss, as the Court observed in granting Black River's Motion to Withdraw the Reference, the fifteen SEG 1 preference defendants raised a similar issue in their motions to withdraw the reference.   (Nov. 4, 2009 Order; *see also Fortis* Opinion, at 5.)  If this Court reaches the merits of Black River's motion to dismiss, it would decide a threshold legal issue central to the fifteen other preference actions now before it (as well as the SEG 3 cases that remain before Judge Squires) and expedite the ultimate resolution of these customer cases.

client funds from its own proprietary funds.  *See* SEC Rule 206(4)-2, 17 C.F.R. § 275.206(4)-2 (requiring registered investment advisers to segregate client funds); Commodity Exchange Act ("CEA"), 7 U.S.C. §6d(a)(2); 17 C.F.R. § 1.20(a) (prohibiting an FCM from commingling its own proprietary assets with client assets).

Sentinel managed Black River's investment for seven months, beginning January 10, 2007, when Black River signed the Management Agreement with Sentinel.  (*See* Black River's Mem. in Support of Its Motion to Dismiss the Complaint ("Mot. to Dismiss") (Ex. 2) at Ex. 2-A). In compliance with the Investment Advisers Act and the CEA, the Management Agreement established that Black River's assets would be deposited with the Bank of New York ("BONY") where they would be "held for the benefit of [Black River]," and stated that Sentinel would not have "any interest in funds or securities" deposited by Black River.  (*Id.* ¶ 5(a) & (b); Compl. ¶ 27.)  Black River invested with Sentinel by depositing cash into Sentinel's "SEG 3" account at BONY.   The Trustee alleges that Black River withdrew its investment, totaling $97,664,073, from a SEG 3 account between July 7, 2007 and August 3, 2007.  (Compl. Ex. A.)  Sentinel does not allege that Black River withdrew its investment because it suspected Sentinel was insolvent. Sentinel filed for bankruptcy under Chapter 11 of the Bankruptcy Code on August 17, 2007.

As alleged in the Trustee's Complaint, and more fully described in Black River's Motion to Dismiss (*see* Mot. to Dismiss (Ex. 2) at 4-6), Sentinel admittedly engaged in a scheme to defraud its customers by misappropriating customer assets to secure its own proprietary trading accounts and to pay down a personal loan from BONY.  The Sentinel Bankruptcy has sparked numerous actions in both the Bankruptcy and District Courts.  Among these actions are two waves of adversary preference actions filed by the Trustee against Sentinel's former customers. In the first wave, the Trustee sought to recover certain transfers received by fifteen so-called

"SEG 1" customers, FCMs who deposited cash and securities with Sentinel to serve as margin for their commodity futures trades.  On October 28, 2009, this Court granted fifteen similar motions to withdraw the reference from the Bankruptcy Court in these preference actions.  The Court did so because it found that whether Sentinel's alleged commingling of customer funds defeats a statutory and express trust is a "significant open and unresolved issue." *Fortis* Opinion at 6-7.

The Trustee brought a second wave of adversary preference actions against nine so-called "SEG 3" defendants, who deposited assets with Sentinel pursuant to investment contracts designed to provide conservative interest-bearing investments offering daily liquidity.   Black River is one of these SEG 3 defendants.  At Black River's request, the Court withdrew the reference in this matter on November 4, 2009, for the same reason it withdrew the reference in *Fortis*.

## ARGUMENT

District courts have the inherent authority to reconsider interlocutory decisions, including the denial of a motion to dismiss, at any time before entry of a final judgment.  *See, e.g.*, *Zurich Capital Markets Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005) ("A court may exercise its inherent authority to reconsider an interlocutory order because such orders are 'subject to revision at any time before the entry of judgment adjudicating all the claims.'") (quoting Fed. R. Civ. P. 54(b)); *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge");  *Cameo Convalescent Center, Inc. v. Percy*, 800 F.2d 108, 110 (7th Cir. 1986) ("The district court has discretion to make a different determination of any matters that have not been taken to judgment or determined on appeal.  Pre-judgment orders, such as motions to

dismiss, are interlocutory and may be reconsidered at any time."). The same holds true when the interlocutory order was entered by another judge earlier in the proceeding. *Bowles v. Wilke*, 175 F.2d 35, 37 (7th Cir. 1949) (holding that it is "beyond question that as to interlocutory orders entered in the District Court, the trial judge himself or any judge succeeding him in the disposition of a pending case may vacate any such prior order").

This Court reconsidered BONY's motion to dismiss an adversary action filed by the Trustee under almost identical circumstances.  Like Black River, BONY filed a motion to withdraw the reference from Judge Squires and a motion to dismiss the complaint on the same day.  *Grede v. BONY*, Bankr. Adv. No.  08-00127 [DE #s 24, 26, 28, 29].  Judge Squires orally denied BONY's motion to dismiss without prejudice on June 10, 2008.  (*BONY*, Adv. No. 08-00127 [DE # 51].)  Ten days later, this Court withdrew the reference (*Grede v. BONY*, No. 08-02582 [DE# 10]), and proceeded to reconsider BONY's motion to dismiss.  *See Grede v. BONY*, 2009 U.S. Dist. LEXIS 6184 (N.D. Ill. Jan. 27, 2009).[3]

For a variety of reasons, Black River believes the Court should reconsider Black River's Motion to Dismiss in order to decide the threshold, unresolved issue the Bankruptcy Court declined to reach:  whether a debtor's  misuse of statutory and express trust assets creates a property right in the misused trust account on the part of the fraudulent debtor that permits the

---

[3]  Because the present action is now pending before the District Court, Black River has filed a motion for reconsideration of its Motion to Dismiss.  Alternatively, the present motion could be considered a timely notice of appeal of Judge Squire's denial of Black River's Motion to Dismiss.  *See* Fed. R. Bankr. P. 8002.  Section 158(a) of the Bankruptcy Code grants district courts jurisdiction over interlocutory appeals from the bankruptcy court.  *In re Patel*, No. 06-2834, 2006 WL 2735380, at *2 (N.D. Ill. Sept. 21, 2006). District courts in this Circuit apply the framework set forth in 28 U.S.C. § 1292(b) to interlocutory appeals from the Bankruptcy Court. S*ee Trustee of Jartran, Inc. v. Winston & Strawn*, 208 B.R. 898, 900 (N.D. Ill. 1997).  This doctrine requires that:  (1) there be a controlling question of law; (2) the question of law must be contestable; and (3) the resolution of the legal question must promise to speed up litigation. *Ahrenholz v. Board of Trs. of the Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000).  All three of these considerations are satisfied here.

debtor to recover trust assets from innocent beneficiaries under Section 547(b).  As this Court

held in withdrawing the reference, this is an unresolved issue of federal law.

I.      **BLACK RIVER'S MOTION TO DISMISS RAISES THE PRECISE ISSUE CITED BY THIS COURT AS THE BASIS FOR MANDATORY WITHDRAWAL OF THE REFERENCE.**

        In its opinion granting fifteen similar motions to withdraw the reference, this Court

recognized that Sentinel was required to hold customer funds in trust under the CEA, the

Investment Advisers Act, and by contract.  *Fortis* Opinion at 5.  This statutory and express trust

prevented Sentinel from acquiring any property interest in the SEG 3 non-proprietary trust

account from which Black River was repaid.  *See Grede v. BONY*, 2009 U.S. Dist. LEXIS 6184,

at *23 (N.D. Ill. Jan. 27, 2009) ("[P]roperty held by the debtor in trust for another does not

constitute an interest of the debtor in property for purposes of the bankruptcy law.") (Zagel, J.);

11 U.S.C. § 541(d) ("[P]roperty in which the debtor holds, as of the commencement of the case,

only legal title and not an equitable interest . . . becomes property of the estate under subsection

(a) of this section only to the extent of the debtor's legal title to such property, but not to the

extent of any equitable interest in such property that the debtor does not hold.").

        In its Response to Black River Finance LLC's Motion to Dismiss, the Trustee admitted

that a statutory trust was created here, but argued that Sentinel's commingling of customer assets

should negate that trust, and permit Sentinel to avoid the payment to Black River unless Black

River can trace the payment it received back to its trust account deposit.  (*See* The Trustee's

Response to Black River Finance LLC's Motion to Dismiss the Complaint, Adv. No. 09-512

[DE #27] ("Response to Motion to Dismiss") (Ex. 4).)  Whether Black River or the Trustee is

correct on this pivotal, threshold question is, as this Court held in its *Fortis* Opinion, a

"'significant open and unresolved issue' of non-bankruptcy law and requires 'more than mere

application of existing law to new facts.'"  *Fortis* Opinion, at 7.  This Court, not the Bankruptcy

Court, is the correct court to decide this important federal issue.  Indeed, the Bankruptcy Court declined to reach it.

The Trustee does not dispute that whether it has properly alleged a property interest in Black River's SEG 3 trust account by virtue of the misuse of those account assets is a pure issue of law capable of being determined at the outset.  In its Response to Black River's Motion to Dismiss, the Sentinel Trustee did not identify a single fact that required discovery before this legal issue could be resolved.

In addition to the numerous arguments presented in Black River's Motion to Dismiss briefing that require dismissal of the Complaint, this Court is uniquely positioned to consider the fact that the Trustee's argument contradicts a core purpose of both the Investment Advisers Act and the CEA.  The SEC promulgated the Investment Advisers Act's segregation requirement (Rule 206(4)-2) specifically out of a concern that insolvent investment advisers would misappropriate their customers' funds to pay their own debts—*the very fraud that occurred here*. *See Custody or Possession of Funds or Securities of Clients*, Securities and Exchange Commission, 27 Fed. Reg. 2149, 2149 (Feb. 27, 1962) (Rule 206(4)-2 "is designed to implement [provisions of the Investment Advisers Act] by requiring an investment adviser who has custody of funds or securities of any client to maintain them in such a way that they will be insulated from and not be jeopardized by financial reverses, including insolvency, of the investment adviser.");  *SEC v. Slocum, Gordon & Co.*, 334 F. Supp. 2d 144, 177 (D.R.I. 2004) ("Rule 206(4)-2(a) has been interpreted by the Commission as requiring investment advisers to maintain client assets in bank accounts separate and apart from those of the firm, and to refrain from commingling firm and client assets.").

With respect to the CEA, the purpose of Section 6d of the CEA "is to ensure that FCMs and other custodians of customer funds do not place such funds at risk by using them for their own purposes." *Grede v. BONY*, No. 08-2582, Amicus Curiae Memorandum of Commodities Futures Trading Commission on Handling of Sentinel Accounts by BONY, 4 [DE #32].). The legislative history of the CEA underscores Congress's concern that customer deposits be protected from misuse by insolvent FCMs. *See* H.R. Rep. No. 743, Amendment of Commodity Exchange Act at 5, 90th Cong., 1st Sess. (October 6, 1967) (purpose of language later codified as 7 U.S.C. § 6d(b) is to prevent customer funds from "being used to offset liabilities of the commission merchant"); Senate Rep. No. 947, Amendment of Commodity Exchange Act at 7, 90th Cong., 2d Sess. (January 18, 1968) (purpose of language later codified as 7 U.S.C. § 6d(b) is to prevent customer funds from "being used to offset liabilities of the commission merchant or otherwise being misappropriated"); *see also Craig v. Refco*, 624 F. Supp. 944, 946 (N.D. Ill. 1985), *aff'd* 816 F.2d 347 (7th Cir. 1987) ("Congress was concerned with FCMs' practice of using customer margin funds to satisfy their own debts . . . .").

In addition, important policy concerns support Black River' position here. In the decades since the segregation requirements of the Investment Advisers Act and the CEA were adopted, those requirements have made investment advisers and FCMs essentially fungible with other investment advisers and FCMs. A potential investor need not compare the balance sheets and conduct investigations of the practices of FCMs and investment advisers before choosing one, because the segregation requirements entail that cash deposits are theoretically equally safe from insolvency with any FCM or investment adviser. The Trustee's position, if adopted by this Court, would fundamentally alter investors' freedom to treat FCMs and investment advisers as interchangeable—if a bankrupt FCM or investment adviser can obtain a property interest in

investor funds by merely violating the segregation requirements, then the system is one of "investor beware," and investors would be required to assess and compare the financial viability of FCMs and investment advisers (and their potential for committing fraud) before investing. This is incompatible with Congress' intention in passing the Investment Advisers Act and CEA. As the CFTC stated in its amicus brief opposing the Trustee's position, "[i]t would be paradoxical if misconduct by an FCM in regard to maintenance of segregation would negate the purpose of segregation, which is to ensure that FCMs treat customer funds as the property of customers." (Mot. to Dismiss (Ex. 2), Ex. 2-E at 6.)

In its *Fortis* Opinion, this Court recognized the significant tension that would arise between the CEA and the Bankruptcy Code if a bankrupt FCM could increase its estate by simply refusing to observe segregation requirements. *Fortis* Opinion at 7 (quoting the CFTC's amicus brief argument above). Likewise, in granting Black River's Motion to Withdraw the Reference, this Court noted that same tension would exist between the Investment Advisers Act and the Bankruptcy Code if a bankrupt investment adviser were permitted to satisfy its own debts with client assets by misappropriating them. *See Grede v. Black River Finance LLC*, No. 09-5162, Order Granting Motion to Withdraw the Reference [DE #12].

As this Court also observed, the important federal interests at play where a statutory trust is concerned prevent common law equitable requirements like tracing, that apply to *constructive* trusts, from applying to statutory trusts. *Fortis* Opinion at 6. Indeed, numerous courts have held that the beneficiary of a statutory trust is not obligated to trace. *See, e.g., J.A. Besteman Co. v. Carter's Inc.*, 439 F. Supp. 2d 774, 777 (W.D. Mich. 2006) (When trust and non-trust assets are commingled, beneficiary of statutory trust created by Perishable Agricultural Commodities Act is not obligated to trace assets and the burden shifts to show that disputed assets were not

acquired with proceeds that were to be held in trust); *In re Intronet, Inc.*, 273 B.R. 153, 158 (Bankr. S.D. Ohio 2002) (funds subject to statutory trust created by federal Truth-In-Leasing regulations were not property of the debtors' estate); *In re Suwannee Swifty Stores*, 266 B.R. 544, 553 (Bankr. M.D. Ga. 2001) (state lottery act created statutory trust and debtor did not acquire property interest in lottery trust account even where it commingled lottery payments with its general operating account; voluntary payment by debtor to preference defendant created conclusive presumption that payment was trust property); *In re College Bound, Inc.*, 172 B.R. 399, 403 (S.D. Fla. 1994) (Where funds at issue are "assets of [ERISA Retirement] Plan under an express statutory trust, the tracing requirement does not apply."); *In re Building Dynamics, Inc.*, 134 B.R. 715, 717 (Bankr. W.D.N.Y. 1992) (tracing by defendant not required where payments were made from statutory trust); *In re Fresh Approach, Inc.* 51 B.R. 412, 422 (Bankr. N.D. Tex. 1985) ("It is clear that the [Packers and Stockyards Act] trust beneficiary is not required to carry the burden of tracing; indeed, it is the Debtor who must determine which assets, if any, are not subject to the trust.").  This Court should reject the Trustee's position as a matter of law, and hold that it failed to allege that it gained any property interest in the SEG 3 trust account from which payments were made to Black River.

## II.   THE COMPLAINT SHOULD BE DISMISSED FOR THE ADDITIONAL REASONS STATED IN THE BRIEFS BLACK RIVER SUBMITTED TO JUDGE SQUIRES.

Judge Squires not only declined to rule on the legal issue regarding statutory trusts that caused this Court to withdraw the reference in this matter, but he also declined to address the authority cited by Black River uniformly holding that debtors may not avoid payments made to preference defendants from *express* trusts—as opposed to constructive trusts—such as the express trust all parties agree was created by the Management Agreement here.  (*See* Mot. to Dismiss (Ex. 2) at 13-18 (citing *In re Cannon*, 277 F.3d 838 (6th Cir. 2002); *Flint Ink Corp. v.*

*Calascibetta*, 2007 U.S. Dist. LEXIS 66615 (D.N.J. Sept. 10, 2007); *In re Carrozzella &*

*Richardson*, 255 B.R. 267 (Bankr. D. Conn. 2000)); Reply (Ex. 3) at 9-15.)

As this Court noted in its *Fortis* Opinion (*Fortis* Opinion at 6), the Trustee has argued

that *Danning v. Bozek (In re Bullion Reserve of North America),* 836 F.2d 1214 (9th Cir. 1988)

should be applied to the Complaint's facts, and if applied, the Trustee argues it would convert the

*Trustee's* statutory burden of proving a property interest in the payments made to Black River

into a burden on *Black River's* part to trace the payments it received to its initial Sentinel

investment—something the Trustee claims is impossible to do.  As Black River demonstrated in

the Motion to Dismiss briefing, however, *In re Bullion* is inapplicable here because it did not

involve an express trust.  (Mot. to Dismiss (Ex. 2) at 22-23.)  Rather, critical to the Ninth

Circuit's reasoning in *In re Bullion* was the fact that the only account from which the preference

defendant was paid was a general operating account with respect to which the debtor had

complete legal authority to do with as it wished.  Thus, the *In re Bullion* court held that

"[b]ecause this money could have been used to pay other creditors, it presumptively constitutes

property of the debtor's estate."  836 F.2d at 1217.  Here, without the legal right to control the

SEG 3 account, Sentinel could gain no property interest in it.  (*See* Mot. to Dismiss (Ex. 2) at 20-

23; Reply (Ex. 3) at 6-7.)  Sentinel's admitted misuse of the account is legally irrelevant, as the

case law makes clear.  (*Id*.)

*In re Bullion* is distinguishable for an additional reason.   Because the debtor in that case

used only a general account, that general account contained the debtor's own money in addition

to customer money.  Here, however, there is no allegation in the Complaint that Sentinel

deposited its own money in Black River's SEG 3 account, and that Black River was paid from

any such deposit.  To the contrary, the Complaint alleges that Sentinel had "virtually no capital."

(Compl. ¶ 46.)  The only commingling allegations involving the SEG 3 account are allegations that customer assets were removed from that account and placed in other customer accounts— not that Sentinel deposited proprietary funds in that account while Black River was invested with Sentinel.

In response to the obvious distinction that *In re Bullion* was not an express trust case, the Trustee has pointed to dicta in *In re Bullion* in which the court speculated that the same result would be required if an express trust were at issue.  836 F.2d at 1218.  However, the Ninth Circuit squarely rejected that proposition only three years later.  *See California Trade Technical Schools, Inc.*, 923 F.2d 641, 647 (9th Cir. 1991) ("The tracing requirement . . . only pertains to situations in which the would-be beneficiary seeks to impress a constructive trust upon currently commingled property of the debtor.  *There is no precedent supporting the proposition that restored express trust funds are also subject to this requirement . . . .*") (emphasis added).

Not only is it not the law in the Ninth Circuit that preference defendants must trace payments received from an express trust, but the weight of authority in all circuits imposes tracing requirements on preference defendants only where they seek to impose a *constructive*, equitable trust on debtor assets—something Black River does not request here.  (*See* Reply (Ex. 3) at 11-12, citing *In re Cannon*, 277 F.3d at 851 (tracing is not required where the defendant receives payments from an express trust); *Flint Ink Corp. v. Calascibetta*, 2007 U.S. Dist. LEXIS 66615, at *10-11 (same); *In re California Trade*, 923 F.2d at 647 (express trust funds are not subject to the tracing requirement in a preference action); *In re Carrozzella & Richardson*, 255 B.R. 267, 277-78 (Bankr. D. Conn. 2000); *Chrysler Credit Corp. v. Hall*, 312 B.R. 797, 808-10

(E.D. Va. 2004) (trustee bears the burden of any tracing requirement, not preference defendant),

*vacated in part on other grounds by* 412 F.3d 545 (4th Cir. 2005).)[4]

      Moreover, as Black River showed in its Reply brief, the distinction between the

constructive trust at issue in *In re Bullion* and the express trust at issue here is a principled one.

(Reply (Ex. 3) at 13-15.)  As the court in *In re Carrozzella & Richardson*, 255 B.R. 267 reasoned

in dismissing a preference action for recovery of payments made to express trust beneficiaries:

> Preference defendants are not in the classic trust pursuit role of plaintiff, asking a
> court to recognize their beneficial rights in property for the purpose of recovering
> such property. Rather, they seek retrospective acknowledgment of those rights as
> a defense to a bankruptcy trustee's attempt to avoid a completed transfer to them
> from their alleged fiduciary. . . .  In that context - and assuming that an express
> trust was initially created - it is not appropriate that preference defendants bear a
> burden of tracing their funds, since by transferring funds back to the defendants
> on request, the debtor-trustee has essentially and presumptively "traced" the funds
> for the defendants.

*Id*. at 275-76.  A Bankruptcy Court in this District also concluded after thorough analysis of the

issue that there is a principled reason to distinguish between constructive trusts and express trusts

when construing 11 U.S.C. § 541(d)'s trust exception to the definition of property of a

bankruptcy estate.  *In re Foos*, 183 B.R. 149, 156 (Bankr. N.D. Ill. 1995).  Section 541(d) carves

trust assets out of the debtor's property.  As the *Foos* court stated, while "[e]xpress trusts are

obviously within § 541(d)'s ambit," and thus not property of the estate, constructive trusts are

---

[4] The Trustee has also relied on *Sender v. Nancy Elizabeth R. Heggland Family Trust*, 48 F.3d 470 (10th Cir. 1995), for the proposition that tracing is required even where payments are made from an express trust.  (*Fortis* Opinion at 5.)  But  unlike the authority cited by Black River, that case also did not concern an express trust, but rather a request by defendants that the court "impress a trust upon funds for purposes of exemption from a bankrupt estate," *i.e.*, create a constructive trust in defendants' favor.  *Id*. at 474 (quotation omitted).  That *Sender* is a constructive trust case is made clear by that court's reliance on *First Federal*, 878 F.2d 912, 915 (6th Cir. 1989), which is also a constructive trust case and required tracing for that reason.  *First Federal*, 878 F.2d at 915.  ("[H]aving asserted a constructive trust of which they were beneficiaries, the appellants assumed the burden of identifying the sums of their entitlements by tracing the trust funds through Salem's commingled accounts"). In addition, the account from which the *Sender* defendant was paid was a general account containing all assets of the debtor, unlike Black River's SEG 3 account.  *Id*. at 471.

not automatically excluded from property of the estate.  Unlike an express trust, a constructive

trust is no trust at all, but rather an equitable remedy that a litigant requests the court to impose.

A constructive trust "does not arise until a court decrees it." *Id.* at 156-159.  Of course, where

the court is being asked to create an equitable trust, it may consider how doing so might effect

other victims of a common fraud by lessening their recovery.  Here, Black River asks for no

equitable remedy from this Court, and thus the Trustee retains its statutory obligation to allege

facts showing that it somehow gained a property interest in the payments made to Black River,

facts the Trustee did not and cannot allege here.

## CONCLUSION

For the foregoing reasons, Black River respectfully requests that the Court reconsider

Black River's Motion to Dismiss the Trustee's Complaint.  Further, Black River respectfully

requests that the Court dismiss the Trustee's Complaint, with prejudice, for failure to state a

claim.

Dated:  November 18, 2009

Respectfully submitted,

BLACK RIVER FINANCE LLC

By: s/ Thomas K. Cauley, Jr.

One of Its Attorneys

## CERTIFICATE OF SERVICE

     I, Elizabeth L. Maxeiner, hereby certify that I have served a copy of the foregoing **Black River Finance LLC's Motion for Reconsideration of Its Motion to Dismiss the Trustee's Complaint Reply in Support of Its Motion to Withdraw the Reference** this 18th day of November, 2009.  Notice of Electronic Case Filing has been sent automatically to the following registered parties, which constitutes service of same:

          Jeffrey S. Eberhard
          Chris C. Gair
          Vincent E. Lazar
          JENNER & BLOCK LLP
          330 N. Wabash Ave.
          Chicago, IL 60611

                       s/ Elizabeth L. Maxeiner
                      Elizabeth L. Maxeiner